IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLLEEN CAMPBELL,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 14-6752 |
| | : | |
| **FAST RETAILING USA, INC. et al.,** | : | |
| Defendants. | : | |
| | : | |

**Goldberg, J.**                                                                                                          **December 22, 2015**

### MEMORANDUM OPINION

This putative class action concerns an alleged violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"). Plaintiff Colleen Campbell alleges that a retail clothing store associated with Defendants printed more than five digits of her credit card number on a sales receipt in violation of the FACTA.[1]

Defendants Fast Retailing USA, Inc., UNIQLO USA LLC, UNIQLO California LLC, UNIQLO Connecticut LLC, UNIQLO Massachusetts LLC, and UNIQLO New Jersey LLC have filed a motion to dismiss arguing that this Court lacks personal jurisdiction over them. Defendants do not dispute this Court's personal jurisdiction over UNIQLO Pennsylvania LLC. For the following reasons, Defendants' motion will be granted without prejudice.

**I.     FACTUAL BACKGROUND**

The Complaint contains the following allegations relevant to personal jurisdiction:

Plaintiff was a Pennsylvania resident and citizen at all times relevant to this action. Defendants Fast Retailing USA, Inc. ("Fast Retailing"), UNIQLO USA LLC, UNIQLO

---

[1] The FACTA includes a "truncation requirement" which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." See § 15 U.S.C. § 1681c(g)(1), (3).

1

Pennsylvania LLC, UNIQLO California LLC, UNIQLO Connecticut LLC, UNIQLO Massachusetts LLC, and UNIQLO New Jersey LLC are business entities that market the international clothing brand UNIQLO in the United States.[2] UNIQLO is a brand name of Fast Retailing's global retail clothing sales business. Fast Retailing is incorporated in New York. The remaining entities are all Delaware limited liability companies. (Compl. ¶¶ 5, 6, 8, 11.)

"[Fast Retailing] and/or UNIQLO USA LLC owned, controlled, operated, and managed and did business throughout the United States of America as a national retailer and under the brand name UNIQLO in at least six states including but not limited to Pennsylvania, New York, New Jersey, California, Connecticut and Massachusetts." Fast Retailing, under the name UNIQLO, "owned, controlled, operated, managed and did business" at two retail locations in the greater Philadelphia area. Fast Retailing "directed activity that caused all Defendants to print more than five (5) of its customers' credit and debit card numbers on receipts" through managing and executing "new store roll outs, new requirements analysis [sic], process improvements, project management for credit card implementation and mandated an overall course of action concerning credit card processing—including truncation of credit card information on receipts— at all UNIQLO retail locations, and authorized the manner in which [Fast Retailing] and UNIQLO LLC Defendants carried out that course of action." The UNIQLO LLC Defendants, under the brand name UNIQLO, accepted credit cards at retail stores throughout the country, including the two retail locations in the greater Philadelphia area. (Compl. ¶¶ 7, 9–12, 14.)

In support of their motion to dismiss, moving Defendants submitted an affidavit from Aron Egan Weiss, Counsel at Fast Retailing. In the affidavit, Weiss makes the following assertions: 1) Fast Retailing is a New York corporation with its principal place of business in

---

[2] This opinion refers collectively to the moving LLCs from California, Connecticut, Massachusetts, and New Jersey as the "state-specific LLCs."

New York; 2) Fast Retailing, UNIQLO USA, UNIQLO California, UNIQLO Connecticut, UNIQLO Massachusetts and UNIQLO New Jersey do not have any offices, real estate or employees in Pennsylvania and are not authorized to do business in Pennsylvania; 3) UNIQLO USA is a subsidiary of Fast Retailing; 4) UNIQLO USA is a Delaware limited liability company with its principal place of business in New York; 5) UNIQLO USA operates retail stores in New York and no other state; 6) UNIQLO California, UNQLO Connecticut, UNIQLO Massachusetts, and UNIQLO New Jersey are subsidiaries of UNIQLO USA; 7) UNIQLO California is a Delaware limited liability company with its principal place of business in California or New York; 8) UNIQLO California operates retail stores in California and no other state; 9) UNIQLO Connecticut is a Delaware limited liability company with its principal place of business in Connecticut or New York;  10) UNIQLO Connecticut operates retail stores in Connecticut and no other state; 11) UNIQLO Massachusetts is a Delaware limited liability company with its principal place of business in Massachusetts or New York; 12) UNIQLO Massachusetts operates retail stores in Massachusetts and no other state; 13) UNIQLO New Jersey is a Delaware limited liability company with its principal place of business in New Jersey or New York; and 14) UNIQLO New Jersey operates retail stores in New Jersey and no other state. (Defs.' Mot., Dec. of Aaron Egan Weiss ¶¶ 1-2, 6-29.)

## II.     STANDARD OF REVIEW

When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." See Metcalfe v. Renaissance

Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." Id. A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Provident Nat. Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987).

### III. DISCUSSION

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Metcalfe, 566 F.3d at 330 (citing Fed R. Civ. P. 4(k)(1)(A)). Pennsylvania law authorizes personal jurisdiction to "the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b).

As such, the Due Process Clause limits the exercise of personal jurisdiction under Pennsylvania law. Mellon Bank v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Consistent with due process, personal jurisdiction can be "exercised under two distinct theories, a defendant's general or claim-specific contacts with the forum." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

#### a. General Jurisdiction

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (quoting Intl. Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)).

A corporation's "principal place of business" and state of incorporation are "paradigm" bases for finding general jurisdiction with respect to corporations. Daimler, 134 S. Ct. at 760.[3] However, in Daimler, the United States Supreme Court reiterated that other substantial, continuous and systematic contacts with a forum state may form the basis for general jurisdiction if they are of such a nature and degree to render the defendant "essentially at home in the forum State." Id. 134 S. Ct. at 761 (internal quotations and citation omitted).

I conclude that Campbell has failed to allege general jurisdiction over the moving Defendants. The Complaint does not allege, with reasonable particularity, sufficient facts that would suggest that the moving Defendants are "at home" in Pennsylvania. Regarding the paradigm bases for general jurisdiction for corporations, Campbell has not alleged that Fast Retailing was incorporated in or has its principal place of business in Pennsylvania. Indeed, Campbell asserts that Fast Retailing's principal place of business is New York. (See Compl. ¶ 8; Pl.'s Resp. at 11.) Similarly, Campbell has not alleged that any of the members of the Defendant LLCs are citizens of Pennsylvania or any of the Defendant LLCs have their principal place of business in Pennsylvania or were organized in Pennsylvania.

Plaintiff has also failed to allege that any of the moving Defendants undertook sufficient "continuous, substantial activities" in Pennsylvania that would otherwise justify treating them as "at home" in Pennsylvania. The Complaint alleges that Fast Retailing, UNIQLO USA LLC and the state-specific LLCs "controlled, operated, managed and did business" at various retail locations across the country, including the two UNIQLO retail stores in Greater Philadelphia. (Compl. ¶¶ 9, 11, 18.) The allegation that an entity transacts business, even substantial business,

---

[3] A corporation's "principal place of business" has been determined to be its "nerve center"—the administrative and/or operational headquarters that serves as the seat of control for the corporation. See Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010).

in Pennsylvania is insufficient to establish that it is essentially "at home" in Pennsylvania. See Daimler, 134 S. Ct. at 761 (emphasizing that even "engage[ment] in a substantial, continuous, and systematic course of business" alone is insufficient to render it at home in a forum). As such, even if a plaintiff were permitted to rely solely on the pleadings at this stage, the Complaint's allegations fail to establish a prima facie case for general jurisdiction over any of the moving Defendants.

### b. "Alter Ego" Personal Jurisdiction

Alternatively, Campbell argues that the state-specific LLC subsidiaries are "alter-egos" of their parent companies, Fast Retailing and UNIQLO USA, due to the allegedly high degree of control exercised by the parent companies over the subsidiary LLCs and, therefore, any contacts may be imputed to the out-state entities.[4] (See Compl. ¶¶ 7, 9, 11, 14–15; Pl.'s Resp. at 11.)

As a general rule, a parent company's ownership of a subsidiary that conducts business in the forum is not sufficient to subject a parent company to the forum's jurisdiction. See Radian Guar. Inc. v. Bolen, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014). However, when the subsidiary and parent are "alter egos," contacts with the forum state may be imputed to the out-of-state entity. See Directory Dividends, Inc. v. SBC Commc'ns, Inc., 2003 WL 21961448, at *3 (E.D. Pa. 2003); Daimler, 134 S. Ct. at 758.  To determine whether entities are "alter-egos," courts consider the following factors:

> 1) ownership of all or most of the stock of the subsidiary; 2) common officers and directors; 3) a common marketing image; 4) common use of a trademark or logo; 5) common use of employees; 6) an integrated sales system; 7) interchange of managerial and supervisory personnel; 8) subsidiary performing business functions which the principal corporation would normally conduct through its

---

[4] At points in the response, Campbell seems to argue that UNIQLO Pennsylvania's contacts with the forum should be imputed to the other state-specific LLCs. However, Campbell provides no further allegations or evidence that would support application of the alter-ego doctrine in this context.

6

>own agents or departments; 9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor; and 10) receipt by the officers of the related corporation of instruction from the principal corporation.

Directory Dividends, Inc., 2003 WL 21961448, at *3. The common theme of the "alter ego" analysis is whether the plaintiff has alleged sufficient facts demonstrating that "[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship." Directory Dividends, Inc. v. SBC Commc'ns, Inc., 2003 WL 21961448, at *3 (quoting In re Latex Gloves Products Liab. Litig., 2001 WL 964105, at *3 (E.D. Pa. 2001)).

Campbell argues that Fast Retailing and/or UNIQLO USA LLC controlled operations, managed the store processes for "credit card implementation" and "directed activity" that caused the noncompliant receipts to be printed at retail stores. (See Compl. ¶¶ 7, 9-10, 12, 14-15.) Campbell's response to the motion to dismiss reiterates the bare allegations contained in the Complaint regarding Fast Retailing's control over the state-specific subsidiaries. Without any specific facts demonstrating the nature of Fast Retailing's control over the subsidiaries, Campbell has not made out a prima facie case of "alter ego" jurisdiction.

Regarding UNIQLO USA LLC, Campbell did set forth additional facts in her response as to the degree of control UNIQLO USA LLC exercised over the subsidiaries. Specifically, Campbell points to several "indicia" of control, including the Defendants' declaration stating that New York is the principal place of business for all of the LLCs—suggesting that UNIQLO USA LLC controls those entities—and public statements of UNIQLO's CEO regarding the clothing brand's expansion into Philadelphia. (See Pl.'s Resp. at 11, 14–15.)

These indicia of control are insufficient to establish "alter ego" jurisdiction. Campbell has not alleged with reasonable particularity nor offered evidence to support a finding that there are no formal separations in UNIQLO's company structure to justify treating the parent and its

7

subsidiaries as one entity.  To the extent that Campbell is arguing that UNIQLO USA LLC owns the subsidies, that argument alone is insufficient to establish that those companies are alter egos. Though an out-of-state parent's ownership of all or substantially all of an in-state subsidiary's stock is one indicator that a parent and subsidiary are "alter egos," Campbell has not alleged any such degree of stock ownership. Thus, Campbell has also failed to make out a prima facie case that this court has "alter ego" jurisdiction over UNIQLO USA LLC.

    c. **Specific Jurisdiction**

Specific jurisdiction refers to the authority to hear cases in which "the suit aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  The Third Circuit applies a three-prong test to determine if specific jurisdiction exists over an out-of-state defendant. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "'purposefully directed [its] activities' at the forum."  O'Connor, 496 F.3d at 317 (alteration in original) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 476 (1985)).  Second, the dispute must "'arise out of or relate to' at least one of those activities."  Id. (quoting Helicopteros, 466 U.S. at 414). If the first two requirements are met, a court will then consider whether exercising jurisdiction would comport with "fair play and substantial justice." Id.  (quoting Burger King, 471 U.S. at 476).

Regarding the first step, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  "The placement of a product into the stream of commerce, without more, is not an act of the defendant

8

purposefully directed toward the forum State." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 112 (1987)).

Purposeful availment may be shown when an out of state Defendant has set up offices in, pays taxes to or owns property in the forum state, and has sent employees to the forum state. See McIntyre, at 131 S. Ct. at 2790. Purposeful availment can also be shown where an out-of-state defendant has registered to do business in the forum state or holds bank accounts in the forum state. See Goodyear, 131 S. Ct. at 2852. Likewise, purposeful availment can be demonstrated by a defendant's commercial website if the website directly targets residents of the forum state, the defendant knowingly interacts with forum state residents through the website or through other sufficient "related contacts." Toys "R" Us, 318 F.3d at 454.

Campbell has failed to establish that the state-specific LLCs have purposefully availed themselves of the privilege of conducting activities in Pennsylvania. Campbell has not alleged that any of the state-specific LLCs are registered to conduct business in Pennsylvania. Campbell has also not alleged with reasonable particularity that any of the state-specific LLC Defendants—other than UNIQLO Pennsylvania LLC—engaged in a deliberate targeting of Pennsylvania as a market for conducting business.

For instance, Campbell does not point to advertisements that were deliberately directed to Pennsylvania residents that display the names of any of the state-specific LLCs. Campbell also does not allege that executives employed by the state-specific LLCs communicated directly with customers in Pennsylvania or visited the state. See McIntyre, 131 S. Ct. at 2790. Accordingly,

Campbell has not sufficiently alleged that the state-specific LLC Defendants have purposefully availed themselves of the benefits of conducting business in Pennsylvania.[5]

Likewise, Campbell failed to establish a prima facie case for specific jurisdiction over Fast Retailing and UNIQLO USA LLC.  Campbell has not shown that either Fast Retailing or UNIQLO USA LLC are registered to do business in the state of Pennsylvania, pay taxes in Pennsylvania, maintain offices or have employees in Pennsylvania.  Nonetheless, I will address Campbell's arguments regarding each of these Defendants in turn.

Campbell alleges that Fast Retailing "owned, controlled, operated, managed and did business" and "accept[ed] cards or debit cards for the transaction of business" at the two UNIQLO retail stores in Pennsylvania.  (Compl. ¶¶ 9–10.)  Campbell also alleges that Fast Retailing "managed the planning and implementation of new store roll outs, new requirements analysis [sic], process improvements, project management for credit card implementation and mandated an overall course of action concerning credit card processing" at UNIQLO retail locations across the country, including the two Philadelphia area stores.  (Compl. ¶ 15.)

Moving Defendants support their motion with a sworn affidavit which asserts that Fast Retailing does not have any contacts with Pennsylvania.  Campbell failed to respond with any <u>evidence</u> that Fast Retailing purposefully availed itself of conducting business in Pennsylvania, or how Fast Retailing's supposed contacts with Pennsylvania caused the FACTA violations to occur.[6]  This failure is fatal because "at no point may a plaintiff rely on the bare pleadings alone

---

[5] Even if the alleged facts were sufficient to show that the state-specific LLCs purposefully availed themselves of Pennsylvania law, Campbell has not shown that any of the supposed contacts the state-specific LLCs had with Pennsylvania gave rise to the printing of the allegedly noncomplying sales receipts.

[6] Campbell addresses the "relatedness" prong of the Third Circuit's specific jurisdiction test in her response, stating that "Uniqlo USA and/or Fast Retailing are responsible for the installation of systems that generated non-compliant sales receipts in all of its stores, including where Ms.

in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990) (internal citations omitted) (citing Time Share Vacation Club v. A. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)). Therefore, Campbell has failed to present a prima facie case for the exercise of personal jurisdiction over Fast Retailing.[7]

However, Campbell does offer some evidence in support of the exercise of specific jurisdiction over UNIQLO USA LLC. Campbell first points to an online newsletter that emails special offers and promotions to subscribers, including Pennsylvania residents. (See Pl.'s Resp. at 10, 15.) Similarly, Campbell points to UNIQLO's national website, which allows Pennsylvanians to make online purchases, and also allows Pennsylvanians to both see the UNIQLO stores that are hiring and also apply to those stores. (Id. at 10 n.2.) Campbell also cites to an article in The Philadelphia Business Journal which reports that UNIQLO USA LLC's Chief Executive Officer Larry Meyer attended the opening celebration of the UNIQLO retail store at the King of Prussia Mall in May, 2014. (Pl.'s Resp. Ex. A.) The article includes an interview with Meyer wherein he stated that Philadelphia's "close proximity to New York makes it easier for us to ensure that the execution is consistent with our global standards." (Id.) Along

---

Campbell made her purchase." (Pl.'s Resp. at 12.) This statement only reiterates the "bare allegations" made in the Complaint, and therefore, is not a basis for receiving jurisdictional discovery. See Eurofins, 623 F.3d at 157.

[7] Campbell argues that Acorda Therapeutics, Inc. v. Mylan Pharm. Inc., 78 F. Supp. 3d 572 (D. Del. Jan. 2015) provides a basis for exercising specific jurisdiction over Fast Retailing in this case. However, in Acorda, the defendant pharmaceutical company had substantial purposeful contacts with Delaware; it registered to conduct business in Delaware, sent a notice letter to the plaintiff—a Delaware corporation, appointed a registered agent for service in Delaware, registered with the Delaware Board of Pharmacy as a licensed wholesaler and distributor, and had frequently litigated in Delaware in prior cases. Id. at 593. Campbell has not alleged any comparable facts to show that Fast Retailing purposefully availed itself of Pennsylvania law.

the same lines, Meyer also stressed UNIQLO's need "to ensure we have a consistency of execution throughout all of our stores despite the growth and expansion." (Id.) Lastly, Campbell notes that the printed sales receipt she received at the UNIQLO store at King of Prussia Mall provides the address for UNIQLO USA LLC's website—www.Uniqlo-USA.com. (Pl.'s Resp. at 15; Mot. for Class Cert. Ex. A1.) Campbell argues that these statements indicate that UNIQLO USA LLC purposefully availed itself of the privilege of doing business in Pennsylvania.

Defendants counter that the newspaper article and website are inadmissible hearsay and, therefore should not be considered when assessing whether Campbell has offered a prima facie case for personal jurisdiction over UNIQLO USA LLC.

The Third Circuit has stated that in response to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a plaintiff must establish personal jurisdiction through "sworn affidavits or other competent evidence." Time Share Vacation Club, 735 F.2d at 66 n.9. Consistent with direction, courts have held that a plaintiff cannot satisfy this burden by relying on inadmissible hearsay. See, e.g., Green Keepers, Inc. v. Softspikes, Inc., 1998 WL 717355, at *3 (E.D. Pa. Sept. 23, 1998); Agnello v. Paragon Dev., Ltd., 2008 WL 45260, at *4 (W.D. Pa. Jan. 2, 2008) ("[t]he court agrees that as a general matter, it should not consider hearsay statements in considering the issue of personal jurisdiction").

Here, Campbell offers the newspaper article and website to prove the truth of the matters asserted therein – i.e., that UNIQLO USA LLC purposefully targeted Pennsylvania. However, "[o]rdinarily, when offered to prove the truth of the matters stated therein, newspaper articles are held inadmissible as hearsay." May v. Cooperman, 780 F.2d 240, 262 n.10 (3d Cir. 1985). Although the statements the newspaper article attributes to Meyers and the website printouts are potentially admissible under the party opponent exception to the rule against hearsay, Fed. R.

Evid. 801(d)(2), the newspaper article itself constitutes a second layer of hearsay which must be independently admissible. Plaintiff has failed to explain how the newspaper article is admissible. This failure defeats Campbell's argument in support of personal jurisdiction over UNIQLO USA LLC because that argument principally relies upon the article. Thus, on the current record, Campbell has failed to offer sufficient competent evidence to establish a prima facie case for specific jurisdiction over UNIQLO USA LLC.

### d. Jurisdictional Discovery

The Third Circuit has acknowledged the difficulty in asserting personal jurisdiction over a corporation, since a plaintiff is a "stranger to a corporation," and therefore, may require jurisdictional discovery to access information that establishes jurisdiction. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3d Cir. 2009) (citations omitted).

In order to demonstrate a right to discovery, a plaintiff must plead facts that suggest with "reasonable particularity" the existence of the required "contacts between [the defendant] and the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455–56 (3d Cir. 2003). A court should not allow jurisdictional discovery to serve as "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." Eurofins Pharm U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010). Accordingly, I must decide whether certain discovery avenues, "if explored, might provide the 'something more' needed to establish personal jurisdiction." Registered Agents, Ltd. v. Registered Agent, Inc., 880 F. Supp. 2d 541, 547-48 (D. Del. 2012) (quoting Toys "R" Us, 318 F.3d at 456).

Campbell argues that she cannot establish UNIQLO USA LLC's contacts with Pennsylvania or the necessary causal link between UNIQLO USA LLC's contacts and the events that gave rise to the dispute without a formal record that details the relationship between the

Defendants' various business enterprises. (Pl.'s Resp. at 16–17.) Specifically, Campbell points to the need for discovery to determine how "the [Philadelphia area] stores end[ed] up using hardware and software systems that printed receipts with too much consumer credit card information." (Pl.'s Resp. at 16.) Campbell posits that the point of sale systems were most likely determined by a centralized management system designed to create a uniform experience at all UNIQLO retail stores by UNIQLO USA and Fast Retailing. (Pl.'s Resp. at 16–17.)

For the reasons discussed in the foregoing sections, I conclude that Campbell has not demonstrated through allegations or evidence that jurisdictional discovery regarding Fast Retailing or the state-specific LLCs is appropriate.[8] However, Campbell has made a sufficient showing to warrant jurisdictional discovery as to UNIQLO USA LLC. In reaching this conclusion regarding UNIQLO USA LLC, I have considered the newspaper article and website Campbell proffered. Although inadmissible evidence may not be considered when assessing whether a plaintiff has made out a prima facie case for personal jurisdiction, nothing in the case law instructs that I may not consider such evidence in determining whether there is a sufficient basis for granting jurisdictional discovery.

## IV. CONCLUSION

For the above reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted without prejudice. An appropriate Order follows.

---

[8] Campbell argues that jurisdictional discovery is necessary to determine the relationship between all of the Defendants and the events that gave rise to the dispute—the printing of the noncompliant receipts at the Philadelphia area retail stores. However, as the prior sections conclude, Campbell has failed to allege with reasonable particularity that general, "alter ego" or specific jurisdiction may be exercised over Fast Retailing or the state-specific LLCs. For these reasons, I find that jurisdictional discovery is unlikely to provide the "something more" needed to establish personal jurisdiction over those Defendants. However, Plaintiff will be given leave to file an amended complaint to attempt, if possible, to cure the deficiencies in the allegations with respect to these defendants.